Your Honor, yes, thank you. May it please the court, with the court's permission, I would like to reserve three minutes of my time to rebuttal. Try to watch the clock if you can. Thank you, Your Honor. Just to review, this is a challenge to a regulation published in the Code of Federal Regulations and to an advisory opinion published on the FTC website on a variety of grounds including a First Amendment challenge. The district court dismissed the entire complaint for lack of standing based on an argument that the FTC made for the first time in its reply brief. Because the court got the law wrong, that ruling was in error. The district court applied what is sometimes called the BABBITT framework or the BABBITT-Lopez framework and concluded that the plaintiffs, there was no imminent threat of prosecution and therefore the plaintiff could not establish Article 3 standing to bring action. The concern that the plaintiffs have, of course, is that I don't think the court ever explains and I don't think the court ever explains why the BABBITT framework is relevant in the first instance. The BABBITT framework is not relevant where a party is in compliance in the challenge directive. Before we get to the Article 3 challenge, I want to move back to your complaint for a minute, please. Where in the complaint do you allege that you would use a soundboard in a way prohibited by the new letter if that letter were not in effect? I don't remember seeing that. I'm sorry, you're asking... Where in the complaint do you allege that you would use a soundboard in a way prohibited by the new letter, the FTC letter, if the letter were not in effect? The complaint alleges that the plaintiffs are soundboard users and they are not thought between risking a very significant fine or abandoning... Again, my question is, where do you allege that you would use the soundboard in a way prohibited by the new letter if the letter were not in effect? In other words, take away the letter. Have you alleged that, but for the letter, you would be Well, I think the allegation that the plaintiffs are whipsawed between those two and they were forced to abandon a successful business practice is the allegation I would cite to. I mean, if that were the only issue with the complaint and that were the only issue with standing, I thought that could be easily corrected on an amended pleading. I think the concern here is that the court believes or may believe that the Babbitt factors apply even where a party is in compliance with the challenge directive and that's the issue that is being disputed because I think the law is absolutely clear that the Babbitt framework is simply not applicable under those circumstances. Well, basically, as you well know, you've got to show harm that what you want to do is going to be harmed. And that goes to Article 3 standing. It also goes to prudential standing. You know, you've got to show that something's going to happen to you if you use the soundboard if this new regulation is in effect. And I'm struggling to see where you make that allegation. You tell us about, you know, the conundrum and all that sort of thing, but you don't say, boy, if we didn't have this letter, we'd be doing this and we're going to be blocked. I think, again, Your Honor, I would point to the the allegation that they are forced to choose between abandoning a successful business model in which they've invested significant sums or risking, you know, potentially ruinous I think that satisfies the standing requirement that the Supreme Court recognized in Virginia, the American booksellers, which is a post Babbitt case. And we know that that is good law because the Supreme Court reaffirmed that holding in the Anthony case. I think the allegations here very closely track the allegations in that particular case where we have a party, in that case, the practice, because of some new ordinance, they faced a risk of very severe sanctions and they were forced to choose between risking imposition of severe sanctions or engaging in costly compliance measures, you know, which included radically reshaping their business practices and abandoning. This is Judge Clifton. Let me focus on that because I look at the paragraph of your complaint that you're standing on and it actually doesn't say anything about your client. It makes reference to the soundboard industry. And so I think the concern identified by Judge Smith still really hasn't been answered. We don't know how your client will purport or allege to be affected. The industry as remarkably unspecific about how your client operates to be able to figure out how the FTC, either the rule itself or the staff interpretation or the staff interpretation that's been withdrawn impacts on your client. Particularly when we have a standard that requires sufficiently imminent enforcement concerns, which seem unmentioned in the complaint, other than this general industry is whipsaw. So how in the complaint tells us what we need to know to conclude there's imminent enforcement. Okay, as far as if the plaintiffs are in compliance with the directive, they Yeah, but your complaint doesn't even allege that. But that I appreciate your honor's concerns. I again, I would point to the paragraph that I allege the fact of the matter is that could easily be corrected on the amended pleading. And in fact, well, let me ask you about that. Have you have you filed? I mean, you were this was dismissed without prejudice. The next day, you could go in and file a new action with a more specific pleading. Have you done that? Or have you done that since then? We've not done that since then. And the reason is what we understood that the court had denied our request to file amended completely. Well, they didn't make a lawsuit. I mean, he's dismissed explicitly without prejudice. And the district court's order said a more specific pleading could do the job at least with regard to satisfying the standing requirements at that stage. Has anybody ever been made to do that? I think the the order stated that we could file an amended complaint if we could allege imminent enforcement, the threat of an imminent enforcement action by the FTC. That was a conditional amendment. What the court allowed was only a conditional amendment under a particular circumstance that we cannot plead. We obviously cannot plead that the FTC is going to file an action against if the plaintiffs are in compliance with the directive. Now, we requested Wait, stop. I don't think I understand. In compliance with directive, what do you mean by directive? I mean, the directive that we're challenging, we're challenging the regulation that is published in the Code of Federal Regulations. And we're challenging the 2016 division. Withdrawal of the 2008 letter or nine letter. So, yeah, you're not facing imminent enforcement, if that letter is still in effect. But I really don't understand what it is the cause of action is about. If in fact, you are not, if you are in compliance with what the FTC understands the current state of the law to be, okay, there's no imminent enforcement there. But that's plainly not your position. You're complaining about the FTC's refusal to maintain the position they maintained in 2009. So what's the challenging? We're challenging the regulation as a whole. What the Supreme Court said in Virginia, the American booksellers is if a plaintiff faces a risk of severe sanctions, and in response to that risk, they are forced to engage in costly compliance measures, which may include abandoning a highly profitable line of business that qualifies as an article three injury. That's the injury that we're claiming, Your Honor. We're claiming the fact that this new interpretation by the FTC is forcing the plaintiffs to radically reshape the way they do business, to engage in self-censorship of protected First Amendment speech, and to forego a profitable line of business. That's the injury. And I think that is the injury the United States Supreme Court has recognized in, for example, Virginia for the American bookseller. In fact, I do think the standing allegations do track the article three injury that the court recognized in that case. Now, I appreciate, Your Honor, a concern that we exactly what the plaintiffs were doing beforehand, rather than lumping them together with other members of the soundboard industry. About which there's no detailed description either. Where in the complaint is there any detailed description of how the this operation works? I think there is a very detailed description of exactly how soundboard works, and why soundboard. I can tell you why is there error, but that doesn't tell me what plaintiff's problem is, and what plaintiff's operation is. We could have been, well, plaintiffs are soundboard users. They're using soundboard as professional fundraisers. I mean, I think the, admittedly, we could add some substance to those particular allegations. The fact is... Well, why haven't you? If you want to get this adjudicated, why haven't you filed a complaint that does that? The district court, as we interpret it, denied our request for leave to amend that was made in the responsive memorandum. On page seven of the responsive memorandum, we stated that we think the allegations of standing are sufficient, but to the extent that they are deficient, they could easily be corrected by an amended pleading. As we read the court's order, the court rejected that particular request. The court said, however, the defect in plaintiff's complaint may be cured by amendments, so the court dismisses plaintiff's claims without prejudice. Yes, but... The door is open to file something more specific. Have you done so? We have not done so, Your Honor. That's correct. Why not? Because the district court apparently believes that we do not have Article 3 standing because of the application of the Babbitt factors, and we cannot plead a threat of imminent prosecution. The Babbitt factors do not apply in this particular instance because plaintiffs are not engaged in ongoing violations of the directive. Once the party complies, the Babbitt framework is simply inapplicable. Counsel, you want to save your time here? You've got down two minutes and 19 seconds and dropping. Up to you. Uh, well, we may have to continue this. I have two minutes and 19 seconds and drop. I think I would like to reserve my time, Your Honor, yes. Very well. Okay. All right, Mr. Grossman, you represent the government Federal Trade Commission. What's your argument, please? Good morning, Judge Clifton, Judge Smith, Judge Murphy. May it please the court? Brad Grossman for the Federal Trade Commission. I wanted to start by sharing Judge Smith's concern that in a pre enforcement challenge, plaintiff needs to tell the court what it plans to do if it wins the case because the plaintiff is seeking injunctive relief. If the plaintiff can't articulate what conduct an injunction of this court would protect, the plaintiff has no clear stake in the matter. The plaintiff, therefore, has no standing, and all the plaintiff has is a hypothetical case. There's a number of reasons why, in this case, Mr Zeitlin's repeated allegation that he's a member of the soundboard industry simply is not enough. One reason is if you look at the actual counts in the complaint, four out of the five counts of this complaint, Your Honors, are First Amendment counts invoking a constitutional right to engage in telemarketing on behalf of charities. There is not a single factual allegation in this complaint that Mr Zeitlin or his businesses have ever placed a telemarketing call on behalf of a charity or have any future plans to do so, let alone any plans to do so using soundboard. Mr. Zeitlin's fifth count is an APA notice and comment count that change that challenges the change in FTC guidance between 2009 and 2016. The problem for Mr. Zeitlin is that he never alleges, and I think Judge Clifton may have mentioned this, doesn't mention that he ever relied on the 2009 guidance. The 2009 guidance addresses a very specific factual scenario, Your Honors, where a soundboard use may be lawful if a telemarketer uses it only to communicate with one consumer at a time with a live telemarketer who follows the call beginning to end and hears what is said. There is nothing in this complaint, Your Honors, to suggest, even if the complaint is interpreted in Mr. Zeitlin's favor, that he ever relied in good faith on the 2009 complaint. And therefore, he has no standing for any of his counts. No standing for the constitutional counts because he never alleges he engaged in constitutionally protected activity. No standing for the APA count because he never claims that he relied on the earlier guidance. There's yet another reason why, another way in this complaint leaves this positive questions unanswered. And it's that many uses of soundboard technology are not proscribed by the regulation being challenged here and are not within the text of the letter. And Your Honors can see this yourselves at page 94 of the excerpts of record. The letter under review, the many soundboard uses are unaffected. Those examples include inbound telemarketing, where the consumer contacts the telemarketer. It includes informational calls, meaning if Mr. Zeitlin is placing calls not to sell a good or service, but to provide information, political calls, survey calls. The complaint is completely silent on whether Mr. Zeitlin has any intent or has any past history of placing soundboard telemarketing calls of that nature. Simply claiming that somebody is a member of a soundboard, somebody is a user of soundboard technology gets Mr. Zeitlin precisely nowhere in establishing that he faces any credible threat. Mr. Zeitlin also fails to allege who he would be calling. And of course, under this court's long Clark versus City of Seattle, the plaintiff needs to specify to whom he would be making the protected communications. No reference to who he would be calling. If Mr. Zeitlin was using soundboard technology to call people who have consented to receiving the technology, if he was using soundboard technology to contact people who are existing members and donors of a charity, again, the letter that Mr. Zeitlin challenges would pose no injury in fact, and the case would have to be dismissed due to the lack of Article 3 standing. Mr. Zeitlin also doesn't allege when he would plan to make the calls. Article 3 does not apply to speculative or hypothetical claims of injury. If Mr. Zeitlin had no plan to, if Mr. Zeitlin has only, and I engage in the protective conduct, protected conduct does not suffice. You have to allege when. Mr. Zeitlin does not allege when. He doesn't say, for example, that if he were to prevail in this lawsuit, he's got a plan in place in the near term to implement soundboard technology. He's got a plan in place to engage in, as I said before, constitutionally protected activity, meaning a plan to engage in telemarketing on behalf of charities. Not there. So this goes back to the standard that this court first articulated in Thomas v. Anchorage Equal Rights Commission. The plaintiff needs to allege that he's got a concrete plan by saying when, to whom, where, and under what circumstances would the plaintiff do what he or she plans to do. And every single one of those variables is completely missing from this complaint. And Mr. Zeitlin, you know, throughout his briefing and in Mr. Kimball's argument, they suggest another test would apply. I suggest they don't really tell us what that alternative test of injury would be. In the Virginia bookseller's case that Mr. Zeitlin cites, the defendant, or I'm sorry, the plaintiff in the case was currently out of compliance with the law. And there was no mystery in that case what the plaintiff wanted to do. The plaintiff operated bookstores and there was a Virginia law that required bookstores to have a separate adult only section. There was no mystery. The concrete plan in the case was that the plaintiff wanted to continue the status quo. But there's, again, no level of specificity, no level of concrete detail here. And again, the plaintiff needs to tell the court what the plaintiff wants to do if they win the case. Otherwise, they've got no skin in the game. And the failure is made all the more unusual considering the fact that Mr. Zeitlin had the ability to amend, whether he had leave to amend in this action or had leave or simply could have filed a new action. He could have done so. He hasn't. And I'm happy to answer any questions that the court may have or submit at this point. Mr. Grossman, is there a way for the plaintiffs to amend their complaint here that would address the concerns that you have raised? Absolutely. And I point to this court's opinion in the victory processing case, which was also a robocall case. But the difference in that case was that the plaintiff described the nature of the conduct that it wanted to engage in. The that it was a political telemarketing firm. It made calls with to to spread political messages to deliver political surveys on behalf of itself and others. And it and the plaintiff alleged specifically that the state law at issue was going to threaten it to shut down. We see nothing at all like this in the complaint. I don't I don't think it would have required some elaborate essay for for Mr. Zeitlin to state a claim. But it would have relied it would have required the five doubles use, if you will. That's the quintessence of a curable defect. Mr. Zeitlin had two bites of the apple, I submit, and did not cure. I'm happy to address any other questions from the court. Questions by either of my colleagues. So we'll pose one question. Your brief starts with the proposition that we lack appellate jurisdiction. That gets into esoteric elements that feel like quicksand sometimes. But in this case, there was a final judgment entered by the district court. It was entered the same day that the district court's order was entered. Why isn't that enough to give us appellate jurisdiction? That, you know, the judgment, the judgment paper was was entered by the deputy clerk. And I, you know, I tried to see, you know, where in the record, the district judge, you know, ordered or directed the deputy clerk to enter that and in W.M.X. itself, the controlling on bond precedent in the judge's order itself, it contained a judgment. So so if the if the if the W.M.X. makes a point of saying when a district court grants leave to amend, which in this case, the district court didn't. I mean, I think it's a it's a ripple in terms of how perhaps the district in Nevada processes paper with such efficiency that there's not a gap during which, in this case, this plaintiff could have filed a motion to amend. But they didn't leave that time. One seemed to immediately follow the other. And so you've already heard me say in speaking to your colleague, you could file another lawsuit next week, but didn't. But I'm not sure what alternative the plaintiff had in this case, given that the district court rapidly followed the district court's dismissal order, which acknowledged that amendment could cure the problem. With a dismissal, final judgment, I, you know, we we at the FCC read the paper that said an amendment could cure the problem is permission to amend and, you know, I respect that the court court reads that reads that differently. I point out, though, that in WMX itself, when it describes the Lopez versus City of Needles case, the en banc court suggests that judgment of district courts not not appealable when the district court makes statements reflecting that amendment could be made. And if nothing else, the statement that the defects may be curable by amendment is a statement that amendments could be made. But, you know, that respect the court may disagree. No, I get your point. The mechanics get difficult. I just imagine myself. I used to be a practicing lawyer. What do I do if I've already got a judgment entered? How do I file a motion for leave to amend if the judgment's already been entered? What I do probably is file a new lawsuit the next week. But that hasn't been done. So here we are. So if there are no other questions by my colleagues and Mr. Grossman, if there are no further questions, I would just encourage the court to to affirm. Thank you. Thank you very much. Mr. Kimball, you have a little bit of time to respond. And I would like you, if you will, to respond to the fact that as Mr. Grossman has pointed out that four of the five counts in the complaint really are First Amendment complaints about charity calls, which, of course, is far afield from what you've been discussing thus far. What are we to make of that? Does it make any difference that the gravamole of your complaint deals with First Amendment issues as opposed to the issues you've been discussing in your argument? Are you there, Mr. Kimball? I'm sorry, your honor, I was muted.  Yeah, what I said was in the in Mr. Grossman's advocacy, he pointed out that four of the five counts in your complaint are First Amendment claims regarding the potential solicitation of charities. That has nothing to do with what you've been talking about there to four. Can you explain what these four counts have to do with the argument that you have thus far? I'm not entirely sure I understand the question. We're challenging a regulation that's been published in the CFR. There's no dispute that that is a final agency action, and we're challenging that on First Amendment grounds because it is a it is a content based regulation and it does not provide strict scrutiny. That's essentially the argument. It is based on the D.C. the Ninth Circuit opinion in Facebook. The degree that portion of the opinion that still remains in effect. That's essentially the argument. And those are the First Amendment arguments with respect to, in fact, each of the counts. They are content based. They draw a distinction based on the purpose of the phone call and the party on whose behalf the call is placed. Exactly. Is it your argument that your First Amendment argument here provides you with standing? You've not alleged that any particular individual is harmed by just the industry. Don't we get back to the same questions of standing that have been articulated by Judge Clifton and myself? I understand that the we have lumped the plaintiffs in with the soundboard industry as a whole and haven't specifically identified exactly what the plaintiff has done. But I think in the in the response to the memorandum on page seven, we asked the court to look that this can easily be corrected by an amended pleading. I don't think the court is allowing an amended pleading because the court specifically ruled that we had to show a credible threat of prosecution and enforcement. That is not the standard that the Babbitt factors do not apply where a compliance. I do think this court has recognized that on a number of occasions. Most recently, Skyline Wesleyan Church, the California Department of Managed Health Care, 2020 decision reported at 968 S. Third, 738, where a party is in compliance. There's no need for that party to jump through the Babbitt hoops and claim a credible threat of enforcement. If they have a complaint, I think we have that argument you have used up your time. Let me ask whether either of my colleagues has additional questions for Mr. Kimball. Hearing none, then we thank both counsel for your argument in this case. The case of United Data Services versus Federal Trade Commission is submitted and the court stands adjourned for the day. Good day to both counsel. Thank you.
judges: CLIFTON, SMITH, Murphy